# IN THE UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

JOHNNY W. SASSER,

    Plaintiff(s),

v.

RYDER TRUCK RENTAL, INC., d/b/a
RYDER DEDICATED LOGISTICS, INC.,
a/k/a RYDER INTEGRATED LOGISTICS,
INC., RYDER SERVICES CORPORATION
and MARTYE LLOYD,

    Defendant(s).

Civil Action No.
2:06-cv-593-CSC

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW, the Defendants, improperly designated in Plaintiff's complaint as Ryder Truck Rental, Inc, d/b/a Ryder Dedicated Logistics, Inc., a/k/a Ryder Integrated Logistics, Inc., and Martye Lloyd, and file this brief in support of Defendants' Motion for Summary Judgment:

## STATEMENT OF UNDISPUTED FACTS

### Summary

This lawsuit arises out of a workers' compensation claim. Specifically, Plaintiff made a workers' compensation claim against Ryder, based on an on-the-job accident which occurred on 9-8-1995.[1] His workers' compensation claim was litigated in the Circuit Court of Barbour County, Alabama (the Clayton Division), and ultimately disposed by a settlement agreement on 2-19-1998.

---

[1] See Defendants' Exhibit 1 (i.e., The Complaint in the above-styled action).

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 2 of 17

Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)
Civil Action No.:    2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

One of the terms of that settlement provided that the Plaintiffs would continue to have such medical benefits as may be provided for the 9-8-1995 accident by the Alabama Workers' Compensation Act.[2]

Since the time of the settlement (2-19-1998), disputes have arisen concerning whether medical treatment sought by Plaintiff was required by the Alabama Workers' Compensation Act. One such dispute was presented to the Circuit Court of Barbour County in 1999 by a Petition for Rule Nisi.[3] That dispute was resolved by a settlement agreement in 2000.[4]

Subsequently, a second dispute was presented to the Circuit Court of Barbour County in 2006, again by a Petition for Rule Nisi. The Barbour County Circuit Court has taken no action on that petition. This Complaint for outrage arises out of the same circumstances which make the basis for the second Petition for Rule Nisi.

## Discussion

The first Orders in the matter were in the course of settling the original workers compensation claim.[5] That settlement was on the basis of a disputed claim, and the Joint Petition stipulated that no medical expenses had been paid prior to the settlement.[6] The Joint Petition also

---

[2] See Defendants' Exhibits 2 and 3 (i.e., Workers' Compensation Settlement Petition and Agreement, and corresponding Order (2-16-1998) from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01*)

[3] See Defendants' Exhibit 4 (i.e., Plaintiff's Petition for a Rule Nisi (1999) from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01*)

[4] See Defendants' Exhibit 7 (i.e., Order Approving Settlement of Past Medical Expense (4-25-2000) from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01*)

[5] See Defendants' Exhibit 3 (i.e., Order Approving Workers' Compensation Settlement (2-16-1998) from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01*)

[6] See Defendants' Exhibit 2 (i.e., Workers' Compensation Settlement Petition and Agreement (2-16-1998) from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 3 of 17
*Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)*
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

recited the fact of a continuing dispute ("a dispute exists between plaintiff and defendant as to whether any workers' compensation benefits are payable. . ." and "in order to amicably settle said dispute, plaintiff and defendant submit themselves to the jurisdiction of this Court. . .").[7]

The language of settlement agreement does not expressly commit Ryder to a continuing obligation to provide treatment for any *specific* medical conditions or treatments, but instead simply incorporates the *general requirements* of the Alabama Workers' Compensation Act, as follows:

> "defendant also agrees to be responsible for reasonably necessary medical expenses incurred by plaintiff in the future as a proximate result of the alleged accident and injury to the extent and in the manner required by Section 25-5-77, Code of Alabama 1975, as amended."[8]

(This language is repeated verbatim in the Order approving the settlement.)[9] The settlement agreement also included the following provision: "Defendant shall not be responsible for payment of any future medical care for plaintiff unless authorization for such medical care is obtained in advance from defendant or its claim administrator."[10]

In the autumn of 1999, Plaintiff went back to Court seeking an Order requiring Ryder to provide certain specific medical benefits.[11] The Court entered an order in which it basically deferred

---

*Division, CV-1997-01*

[7]Id.

[8]Id.

[9]See Defendants' Exhibit 3 (i.e., Order Approving Workers' Compensation Settlement (2-16-1998) from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01*)

[10]See Defendants' Exhibit 2 (i.e., Workers' Compensation Settlement Petition and Agreement (2-16-1998) from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01*

[11]See Defendants' Exhibit 4 (i.e., Plaintiff's Petition for a Rule Nisi (1999) from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01*)

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 4 of 17

Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

to Plaintiff's treating physician, Dr. Wallace B. McGahan for a medical opinion concerning "whether or not, in his opinion, that the injury to Jonnie W. Sasser that occurred on or about September 8, 1995, is a work-related injury and to report said evaluation and determination to this Court."[12] Dr. McGahan reported back to the Court by a letter dated 1-3-2000 in which he confirmed Plaintiff was, in fact, injured in a 9-8-1995 injury.

The Court's decision was embodied in the Court's "Findings of Fact and Judgment" stamped filed on 4-11-2000.[13] The Court made several findings of fact bearing to Ryder's continuing obligation to provide medical treatment, which are set forth in their entirety, as follows:

> "1.   Plaintiff sustained a back injury as a result of an accident which occurred on or about September 8, 1995 and which arose out of and in the course of plaintiff's employment with defendant.
>
> "2.   Plaintiff filed a claim against defendant for worker's compensation benefits and subsequently entered into a Settlement Agreement with defendant which settlement was approved by Order of this Court dated February 19, 1998.
>
> "3.   Paragraph three of the Order approving said settlement provides as follows: 'That defendant shall also be responsible for reasonably necessary medical expenses incurred by plaintiff in the future as a proximate result of the alleged accident and injury to the extent and in the manner required by Section 25-5-77, Code of Alabama 1975, as amended.
>
> "4.   Defendant's dispute of its responsibility for certain medical bills was in good faith and defendant is not found in contempt of Court for failing to pay said bills."[14]

On the basis of the foregoing findings of fact, the Court made several rulings in this Judgment.

---

[12]See Defendants' Exhibit 5 (i.e., Order (10-29-1999) from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01*)

[13]See Defendants' Exhibit 6 (i.e., Findings or Fact and Judgment on Petition for Rul Nisi (4-11-2000) from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01*)

[14]Id.

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 5 of 17

Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

However, rather than make express findings concerning what specific injuries or conditions were or were not caused by the accident, the Court simply deferred to Dr. McGahan. Specifically, the Court merely required Ryder to pay all medical expenses "that are determined by Dr. Wallace B. McGahan . . . to be the proximate result of the injury sustained on September 8, 1995."[15]

Ultimately, the dispute was resolved by a compromise settlement for the sum of $6,000.00, with respect to the issue of accrued medical charges as presented in the Petition for Rule Nisi. The settlement was submitted to the Court for approval, and in a written Order, the Court approved the settlement, finding in part that in exchange for payment of $6,000.00, Ryder is "hereby released and forever discharged from any and all claims for medical expenses incurred prior to the date of this order on account of any injury sustained by plaintiff as a result of any accident which occurred in the course of plaintiff's employment with defendant."[16]

At some point after writing his letter to the Court on 1-3-2000, Dr. McGahan apparently moved or discontinued his medical practice. According to Plaintiff's testimony:

Q.   How about Dr. McGahan? What happened with him?

A.   I have no – and I'm answering truthful. I have no idea. Rumored, he moved away, way before anybody knew he did, to somewhere in north Alabama. I just – I don't know what – anyway, I know for a fact he moved his office. When it was his office, he worked maybe a half a day. And I could not never get to see him. He was just – I didn't have a representing doctor as far as a company doctor, really, because he never worked. And when he did work, he wouldn't work but two or three hours and then he would be gone.[17]

---

[15] Id.

[16] See Defendants' Exhibit 7 (i.e., Order Approving Settlement of Past Medical Expense (4-25-2000) from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01*)

[17] See Defendants' Exhibit 8 *at page 16* (i.e., Deposition of Plaintiff from *Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01*)

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 6 of 17

*Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)*
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

It is unclear exactly when Dr. McGahan discontinued or moved his medical practice; however, Plaintiff's testimony does establish Dr. McGahan was still practicing in 2004, when Ryder first obtained an independent peer review physician report regarding Plaintiff's treatment, and submitted that report to Dr. McGahan for review.[18]

While Plaintiff was still under the care of Dr. McGahan, the Defendants submitted Plaintiff's case to independent peer review on at least three separate occasions, and received three independent physician review reports: (1) a 5-15-2002 report by Dr. Cabot,[19] (2) a 3-17-2003 report by Dr. Wilson,[20] and (3) a 5-2-2004 report by Dr. Wilson.[21]

In the report of 5-15-2002, Dr. Cabot recounts the Plaintiff's extensive medical history, including his diagnosis and treatment since 9-8-1995. In sum, Dr. Cabot expressed disagreement with some of Dr. McGahan's conclusions concerning both the cause of Plaintiff's conditions, and also the best way to treat Plaintiff. In addition, Dr. Cabot made several recommendations for further evaluations and diagnostic approaches, which Dr. McGahan had not pursued.[22] Ryder submitted Dr. Cabot's report to Dr. McGahan by letter three times, asking for Dr. McGahan to comment on Dr.

---

[18] Id., *at page 106-108.*

[19] See Defendants' Exhibit 9 (i.e., Physician Peer Review report by Dr. William Cabot (5-15-2002))

[20] See Defendants' Exhibit 10 (i.e., Physician Peer Review report by Dr. Terrence J. Wilson (3-17-2003))

[21] See Defendants' Exhibit 11 (i.e., Physician Peer Review report by Dr. Terrence J. Wilson (5-2-2004))

[22] See Defendants' Exhibit 9 (i.e., Physician Peer Review report by Dr. William Cabot (5-15-2002))

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 7 of 17

*Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)*
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

Cabot's conclusions. Dr. McGahan did not respond.[23]

Subsequently, Dr. Terrence J. Wilson prepared an analysis addressing specific recent treatment recommendations. Pursuant to his analysis, he prepared a report (dated 3-17-2003) detailing multiple specific treatments from 9-11-1995 to 5-16-2002, and concluding, in pertinent part, as follows:

> "Based upon a review of the available medical records, it is my professional medical opinion that the work-related injuries included lumbosacral strain and cervical strain. These conditions are consistent with the alleged mechanism of injury. Within a reasonable degree of medical probability, these conditions resolved within no less than six months following the date of injury.
>
> "Based upon review of the available medical records, it is my professional medical opinion that there is NO current or recent treatment provided that is related, reasonable and medically necessary with regard to the original work injury.
>
> ". . . .
>
> "There is NO objective medical evidence to support any claim that the underlying mild degenerative changes of the cervical and lumbar spine, as noted in the initial and subsequent MRIs, were causally related to the alleged mechanism of injury. The development of spinal stenosis was, within a reasonable degree of medical probability, solely attributable to the progression of a common and natural spinal disorder of life and was NOT causally related to the mechanism of injury and any physical impairment causally related to the original work injury.
>
> "The relationship of the median neuropathy of the wrists and the subsequent report of neuropathic pain/reflex sympathetic dystrophy to the mechanism and the original work injury is NOT clearly established by the available medical records. The original work injury was the result of the alleged overexertion of the spinal structures. The development of bilateral median neuropathy at the level of the wrists is inconsistent with the mechanism of injury."[24]

Thus, this report ultimately concludes none of the treatments are reasonably necessary and directly

---

[23] See Defendants' Exhibit 12 (i.e., Correspondence from Defendants to Dr. Wallace McGahan (7-10-2002) regarding peer review report of Dr. William Cabot.)

[24] See Defendants' Exhibit 10 (i.e., Physician Peer Review report by Dr. Terrence J. Wilson (3-17-2003))

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 8 of 17

Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

related to the accident. In addition to addressing these specific treatments, Dr. Wilson's report also states his opinion that none of Plaintiff's medical conditions evident in his medical records are related to the on-the-job accident.

Subsequently, on 5-2-2004, Dr. Wilson undertook a second analysis, this time with regard to two newly recommended procedures (trigger point injections). The 5-2-2004 report likewise concludes these treatments are not reasonably necessary and directly related to the 9-8-1995 accident.[25]

After obtaining Dr. Wilson's opinion, Ryder forwarded his analysis and conclusions to both Plaintiff and Plaintiff's physician, in order to allow an opportunity to challenge the findings in the event they disagreed with them.[26] On this point, Plaintiff testified, as follows:

> Q. Okay. Did you ever have any discussions with Dr. McGahan about any kind of peer reviews?
>
> A. He never discussed anything about peer reviews. But that last letter that we go before he went out of business in 2004, that's when he commented about peer review.
>
> Q. What letter was that?
>
> A. It was just —
>
> Q. Is it one that I've shown you or is it different —
>
> A. No, it's the last letter that they — I guess they mailed it in May 2004 and then — might have been July. I can't remember a date. But anyway, it was saying I had to be precertified through them, is what the gist of it was, before I could see a doctor.
>
> Q. Okay. Dr. McGahan was relaying that to you?

---

[25]See Defendants' Exhibit 11 (i.e., Physician Peer Review report by Dr. Terrence J. Wilson (5-2-2004))

[26]See Defendants' Exhibit 13 (i.e., Correspondence from Defendants to Dr. Wallace McGahan (8-22-2003) regarding the 3-17-2003 peer review report of Dr. Terrence Wilson.)

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 9 of 17

Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

A.  No, I relayed it to him. He hadn't received anything yet.

Q.  Because you had received –

A.  – a copy of that saying he had – to make an appointment, I had to go through – he had to call – a nurse call through IntraCorp and make my appointments through them.

Q.  To get it precertified?

A.  Right.

Q.  What did Dr. McGahan say about that when you told him that?

A.  He said, well, we'll get Candy to do it. That was his nurse.

Q.  Okay. Did he seem like that was something that – I guess a type of thing or procedure or whatever that he was familiar with?

A.  He didn't – sir, he didn't say nothing except he'd get the nurse to do it. But then he left right after that, so I never knowed if he did or didn't. Or he never practiced where I could see him.

*See Plaintiff's deposition testimony from Sasser vs. Ryder, In the Circuit Court of Barber County, Alabama, Clayton Division, CV-1997-01, at page 106-108.*

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). See Rule 56(c), Fed.R.Civ.P. If the movant demonstrates that there is no genuine issue of material fact, then the burden shifts to the nonmovant to present evidence of the existence of genuine issue material to the case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991). In reviewing a motion for summary judgment, all justifiable inferences must be drawn in the nonmovant's favor. Anderson

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 10 of 17
*Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)*
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

v. Liberty Lobby, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, in order to survive summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986).

# DISCUSSION

## I. THE UNDISPUTED FACTS SHOW – AS A MATTER OF LAW – THE DEFENDANTS DID NOT COMMIT OUTRAGE

An analysis of Plaintiff's outrage claim is somewhat simplified by the fact that (according to the undersigned's research) since the tort of outrage was first recognized in Alabama, there have been only two reported workers' compensation cases in which Alabama's appeal courts have found a jury question to exist for outrage, on the basis of the handling of the claim. See Travelers Indem. Co. of Illinois v. Griner, 809 So.2d 808 (Ala. 2001); and Continental Cas. Ins. Co. v. McDonald, 567 So.2d 1208 (Ala. 1990). Of these two cases, McDonald merits closest attention, because the Supreme Court has held that McDonald represents the "minimum threshold" of conduct for an outrage claim. See Gibbs v. Aetna Casualty & Surety Co., 604 So.2d 414 (Ala.1992).

> "'In Gibbs v. Aetna Casualty & Surety Co., 604 So.2d 414 (Ala.1992), we acknowledged that McDonald, supra, has come to represent the minimum threshold that a defendant must cross in order to commit outrageous conduct.' State Farm Auto. Ins. Co. v. Morris, 612 So.2d 440, 443 (Ala.1993). McDonald was injured in the line and scope of his employment. He filed a workers' compensation action against Continental Casualty Insurance Company ('CNA'), his employer's insurance carrier, and settled the disability portion of the claim for $12,000. The judgment accepting the settlement left open the medical portion of the claim, and CNA was liable for all of McDonald's future medical expenses arising from his injury.
>
> "Over a period of five years, CNA delayed payments to doctors, hospitals, and pharmacists for unreasonable periods. The delayed payments resulted in the hospitals'

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 11 of 17

*Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)*
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

threatening McDonald with collection actions and caused a pharmacy to refuse to provide him with pain medication. CNA refused to pay for a whirlpool bath that had been prescribed by McDonald's doctor and continued to insist that McDonald try other alternatives to the whirlpool, although McDonald's doctor repeatedly explained to CNA that other alternatives were not viable. ***CNA then attempted to coerce McDonald into settling for an amount far less than CNA owed him***.

"McDonald sued CNA, alleging the tort of outrage. The jury returned a verdict in favor of McDonald. CNA appealed; this Court held that the facts of McDonald's case supported a finding that *CNA 'systematically withheld payments in order to cause McDonald anguish over the possibility of the cessation of medical treatments for his pain and thereby to cause him to accept a method of payment that would not subject him to CNA's "aggravation," as he called it.'* 567 So.2d at 1221.

". . . .

"[A] refusal alone to authorize the [physician] referral, however, does not rise to the threshold of the outrageous behavior set out in McDonald. McDonald had numerous problems with CNA's failure to authorize the most basic of claims for over five years. *CNA then used the results of its failure to pay to coerce McDonald into settling with CNA for an amount much smaller than his medical needs would have required*. McDonald presented evidence demonstrating that he faced severe pain every day and that CNA took advantage of his pain by ceasing to pay for his pain medication. The evidence supported the finding that *CNA intentionally caused McDonald severe emotional distress and that it attempted to use that distress for its gain*."

ITT Specialty Risk Services, Inc. v. Barr, 842 So.2d 638, 644-5 (Ala. 2002) (emphasis added). As demonstrated by the underscored passages above, McDonald shows that the minimum threshold for an outrage claim is not met when the delays and denials of benefits are not part of a scheme of coercion by the defendant insurer.

In the case at bar, there is no coercion or evil intent, and there is certainly no evidence suggesting such. When the defendants did refuse to authorize a treatment, the refusal was based on the opinions of a qualified physician. Because the defendants' conduct in this case falls so far short of the "minimum threshold" for an outrage claim, the outrage claim is due to be dismissed with prejudice.

The Supreme Court of Alabama has repeatedly emphasized the extreme level of conduct the

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 12 of 17
Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

plaintiff must prove to prevail on an outrage claim. In showing how high the bar is set for an outrage claim, the Court has discussed numerous specific examples of conduct which – although far from commendable – was conduct that failed to support a claim for outrage. Most recently, the Court made this point in affirming summary judgment for the defendant in ITT Specialty Risk Services, Inc. v. Barr, 842 So.2d 638, 645 (Ala. 2002). The Barr Court analyzed controlling precedent, and held, as follows:

> "The facts of Barr's case are more analogous to the facts in Wooley v. Shewbart, 569 So.2d 712 (Ala.1990). Carolyn Wooley sued her employer and her employer's workers' compensation insurance carrier, alleging the tort of outrage. Wooley argued that the defendants' refusal to continue paying workers' compensation benefits to her and the defendants' refusal to approve a scheduled hip operation for her, despite her doctors' recommendations, was conduct 'so extreme as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.' Wooley, 569 So.2d at 715.
>
> "The trial court denied the defendants' motion for a summary judgment on the tort-of-outrage claim, and the defendants appealed. This Court observed that Wooley's allegation was 'simply that Shewbart denied Wooley's claim with no arguable reason for doing so.' Wooley, 569 So.2d at 717. The only aspect of the denial that could possibly have been outrageous was the fact that the denial came shortly before Wooley's scheduled hip operation. The denial and the timing aspect, however, did not rise to the level of outrageous conduct necessary to survive the defendants' summary-judgment motion.
>
> "Similarly, Barr alleges that ITT refused to authorize her referral to a pain-management specialist, for no arguable reason, until she filed the present action against ITT. Even if Barr's allegations are true, the failure to authorize a referral alone does not amount to 'conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' American Road Serv. Co., 394 So.2d at 365 (citation omitted). Barr has failed to produce any evidence demonstrating that ITT acted intentionally or recklessly to cause Barr extreme emotional distress. Furthermore, Barr has failed to produce any evidence to show that ITT's conduct was 'outrageous' as that term is defined in American Road Service Co., 394 So.2d at 365."

Barr, supra, slip opinion at 6. Thus, in both Wooley and Barr, the entire outrage claim was based on the mere fact that the plaintiff had not received benefits for his workers' compensation claim, or the benefits had been delayed. However, those case show mere denial and delay is simply is not

Case 2:06-cv-00593-CSC    Document 11    Filed 05/24/2007    Page 13 of 17

*Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)*
Civil Action No.:    2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

enough to survive summary judgment.

Instead, the precedents show that for an outrage claim to withstand summary judgment, the conduct of denial or delay must generally be coupled with some uncivilized or outrageous motive or evil intent. See Travelers Indem. Co. of Illinois v. Griner, 809 So.2d 808 (Ala. 2001) (benefits denied in order to lead employee to agree to a minimal settlement); and Continental Cas. Ins. Co. v. McDonald, 567 So.2d 1208 (Ala. 1990) (benefits denied in order to coerce plaintiff to accept unreasonably low settlement). In other words, the Plaintiff's claim cannot rest merely on the conduct – it must also prove the specific intent.

The case at bar stands in contrast to Griner and McDonald. Unlike those cases, there is absolutely no evidence the defendants in this case had any uncivilized, outrageous or evil intent or motive in making the decisions regarding Plaintiff's benefits. Instead, the most Plaintiff can show in this case is that, as in Wooley and Barr, some benefits were delayed and some were denied. The Supreme Court has made very clear that this level of proof will not support a claim for the tort of outrage. Therefore, Plaintiff's outrage claim is due to be dismissed with prejudice.

## II.    COMPLIANCE WITH UTILIZATION REVIEW DEFEATS THE OUTRAGE CLAIM, AS A MATTER OF LAW

Defendants cannot be liable for outrage where all that has been done is for the workers' compensation carrier to insist on its legal rights in a permissible way. This position was adopted by the Supreme Court of Alabama in State Farm Auto. Ins. Co. v. Morris, 612 So.2d 440, 444 (Ala. 1977):

> "The American Law Institute's Restatement (Second) of Torts § 46 (1977) sets out an analysis of the tort of outrage. This Court has adopted the position set forth in comment g to that section; the comment reads: '***The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well***

Case 2:06-cv-00593-CSC     Document 11     Filed 05/24/2007     Page 14 of 17

*Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)*
Civil Action No.:     2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

>   *aware that such insistence is certain to cause emotional distress. . . .'* Inmon, 394 So.2d at 368; Garvin, 564 So.2d at 431."

Id., at 444. In the case at bar, this principle provides a complete defense, because ***each and every delay complained of by the Plaintiff was occasioned by good faith efforts to follow the Utilization Review Guidelines, which are not only permitted by law, but were in fact established as law*** by Alabama's state agency regulating the handling of workers' compensation benefits.

A workers' compensation carrier may refuse payment for a treatment based on a lack of medical necessity when it follows the utilization-review procedures set out in § 25-5-293(k), and applicable administrative regulations. See Ex parte Southeast Alabama Medical Center, 835 So.2d 1042 (Ala.Civ.App. 2002). The procedure for determining medical necessity is called "Utilization Review," and it is specifically authorized by the Workers' Compensation Act in § 25-5-293(g), Code of Ala. (1975) ("Insurance carries and self-insurers, individual and group, may have utilization review and medical bill screenings"), and § 25-3-293(k) (delegating to the Department of Industrial Relations the authority to adopting Utilization Review guidelines). These Utilization Review guidelines have been judicially recognized as the proper procedure for an employer to follow in deciding whether to authorize payment for a medical treatment prescribed by an authorized treating physician. See Ex parte Southeast Alabama Medical Center, 835 So.2d 1042 (Ala.Civ.App. 2002). In this case, ***the decisions concerning medical necessity of Plaintiff's treatments were made pursuant to a good faith application of the Utilization Review guidelines***.

The fact that the decisions in this case were guided by Utilization Review as established by the Department of Industrial Relations, under authority of the Workers' Compensation Act, establishes, as a matter of law, that this is simply a case of the worker's compensation carrier insisting upon its legal rights in a permissible way, and nothing more. ***This is a complete defense***

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 15 of 17

*Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)*
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

*to the claim for outrage, because an employer or insurer "is never liable, .... where [it] has done no more than to insist upon his legal rights in a permissible way."* Inmon, 394 So.2d at 368. See also, State Farm Auto. Ins. Co. v. Morris, supra.

Moreover, the fact that these procedures are the procedures established by the duly elected representatives of the people of the State of Alabama is dispositive of the fact that the conduct was within the bounds of decency, and as a matter of law, tolerable in a civilized society.

Therefore, the conduct at issue in this case, which was in accordance with the Utilization Review Guidelines, is as a matter of law *not* outrage. See Inmon, 394 So.2d at 365 (defining outrage as conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.") Plaintiff's outrage claim is therefore due to be dismissed with prejudice.

## III. THERE WAS AN ARGUABLE AND GOOD FAITH BASIS FOR DENIAL OF SERVICES IN THIS CASE

In Wooley, the Court went so far as to hold that a denial of a claim with no arguable basis for doing so is insufficient to make a prima facie case of outrage. Nevertheless, *in the case at bar, there is an arguable basis for the denials*. As set forth above, treatment recommendations of the Plaintiff's physician were routinely submitted for peer review by a medical doctor, as is allowed by the Utilization Review Guidelines promulgated by the Department of Industrial Relations of the State of Alabama. All decisions by the defendants with respect to the Plaintiff's medical treatment were based on the qualified opinions of these licensed physicians in the peer review process. The reliance on the qualified opinions of these peer review physicians is without question an arguable reason for denial of the benefits. More than being merely "arguable," this is the basis for denial

Case 2:06-cv-00593-CSC  Document 11  Filed 05/24/2007  Page 16 of 17

*Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)*
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

which has been adopted by the State of Alabama as the preferred basis for denial of benefits.

WHEREFORE, PREMISES CONSIDERED, the Defendants designated in Plaintiff's complaint as Ryder Truck Rental, Inc, d/b/a Ryder Dedicated Logistics, Inc., a/k/a Ryder Integrated Logistics, Inc., and Martye Lloyd, respectfully request that summary judgment be entered in their favor dismissing with prejudice any and all claims against them in this matter, and taxing cost as paid and incurred.

Respectfully submitted,

_____
William A. Austill
Bar Number: ASUS008
Attorney for Defendants

OF COUNSEL:
Austill Lewis, P.C.
P.O. Box 11927
Birmingham, AL  35202-1927

**ORAL ARGUMENT IS REQUESTED**

Case 2:06-cv-00593-CSC   Document 11   Filed 05/24/2007   Page 17 of 17

*Sasser, Johnny W. vs. Ryder Truck Rental, Inc., and Martye Lloyd, et al (outrage)*
Civil Action No.:   2:06-cv-593-CSC
Brief in Support of Defendants' Motion for Summary Judgment

## CERTIFICATE OF SERVICE

I hereby certify that, on the 24th day of May, 2007, I have served a copy of the above and foregoing on counsel for all parties by:

_____   Facsimile transmission;

_____   Hand delivery;

_____   Placing a copy of same in the United States Mail, properly addressed and first class postage prepaid to:

__X__   Using the Electronic Filing system which will send notification of such to the following:

Amy M. Shumate
519 South Oates Street
Dothan, AL 36301
   Attorney For: Johnny W. Sasser

_____
OF COUNSEL