# EXHIBIT "9"



# THE WILLIAM CABOT GROUP

6300 Powers Ferry Rd • Suite 600-330 • Atlanta, GA 30339 • 770-952-4642 • Fax: 770-955-8193

May 15, 2002

Ms. Ellen Seibold, BSN, CRRN
Ryder Services Corporation
P.O. Box 2370
Alpharetta, GA 30023-2370

        RE:            Johnny Sasser
        Date of Injury:  05/22/95
        File #:       AL1-000674-0

Dear Ms. Seibold:

Thank you for sending me the medical records on Mr. Johnny Sasser. I have had an opportunity to review them in detail. What follows is my medical opinion as a result of that records review.

These records appear to be somewhat confusing. There are different physical findings from different physicians.

Generally, it appears to me that this gentleman has degenerative disc disease of the lumbar spine. I cannot say that it is directly linked to the 1995 lumbar strain. It appears that it has gone on for several years. If indeed there is no history of any back problem prior to 1995 and his back problem started with an alleged strain on 05/22/95, then certainly he may have had an aggravation of a preexisting condition which was asymptomatic prior to that aggravation. **I do not have any records of any injury on 05/22/95. The records that I have started on 11/13/95. In addition, they do not state that there is any definitive injury on 05/22/95.**

This **patient was seen by Dr. Alan Prince at Dothan Neurodiagnostic Center on 11/13/95. He gave Dr. Prince a history of having slipped and fallen down some stairs on 11/04/95** when he hit his back, neck and head. He also had a problem with sleep

RECEIVED
MAY 24 2002
Kelly E. Grady



# THE WILLIAM CABOT GROUP

Page 2
Re: Johnny Sasser

apnea and inability to sleep well. He would get up all the time and was tired during the day. Dr. Prince's impression was that the patient had sleep apnea syndrome and that he had a carpal tunnel syndrome. There was **no mention here of an injury on 05/22/95. It appears to me that if this gentleman did have a significant injury on 05/22/95 and he was seeing a neurologist, then he would have mentioned that history.** I do not see it mentioned.

The patient was seen by Southern Bone and Joint Specialists in Dothan, AL on 11/22/95. At this time he gave a history of having neck and low back pain and right carpal tunnel syndrome. Basically he claims that he had a problem with his back in the past. There was **no mention of any definitive injury linked to 05/22/95. Instead there is a definitive injury mentioned where he slipped in water and fell on his back and hit his head.** It appears to me that if he had a definitive injury on 05/22/95 that was significant, it would be mentioned in these notes as he would have mentioned it to his examining physicians. The fact that it is not mentioned to these physicians is an indication to me that it is most likely not causally related to his low back pain.

The patient does complain of radicular-type symptoms, however, as mentioned above there is no history given of an injury on 05/22/95.

Physical examination revealed findings consistent with a bilateral carpal tunnel syndrome. He did have some weakness of grip of the right upper extremity and a markedly positive Tinel's sign on the right and a minimally positive Tinel's sign on the left. He was, however, neurologically intact in both lower extremities. The impression was bilateral carpal tunnel syndrome, severe cervical strain and severe low back strain with low back pain without evidence of any radiculopathy.

The patient was seen back on 02/26/96. At this time he had had surgery for his right wrist and the history goes on to state that he had lower back pain for several years. **If he indeed had lower back pain for several years that would indicate that it most likely preexisted the date of 05/22/95. I therefore do not feel that the injury of 05/22/95 is directly linked to his problem at this time. It is most likely one event in a chain of many.**

RECEIVED
MAY 24 2002
Kelly E. Grady



# THE WILLIAM CABOT GROUP

Page 3
Re: Johnny Sasser

The patient was seen by Dr. Robert Allen, a neurologist, on 03/27/96. Dr. Allen reviewed his history. At this time he stated that he had a problem with delivering parts which weighed several hundred pounds. He stated that he began to have numbness of his fingers as well as neck pain and back pain. It also states that he fell at home several months ago and sustained a cervical and lumbar strain. At no point does it mention a distinct injury of 05/22/95. I therefore once again must render my opinion that I do not see the 05/22/95 alleged injury as being a significant causative factor or certainly it would have been mentioned in the physician's notes.

The **lumbar MRI scan demonstrated multilevel degenerative disc disease** causing mild spinal canal stenosis. On physical examination the patient did have findings consistent with a carpal tunnel syndrome. He also had findings consistent with a reflex sympathetic dystrophy, however, I do not see these symptoms continuing past this date.

An MRI was done at Southeast Alabama Medical Center on 01/23/95. The lumbar MRI revealed mild generalized canal stenosis. There was noted to be disc bulging and hypertrophy of the facets that did encroach on the lateral recesses bilaterally at L4-5. There was noted to be some impingement on the L5 nerve roots on the lateral recesses bilaterally, however, is noted not to be significantly changed since February of 1996. There was no evidence of disc herniation. This was basically a lumbar MRI which was consistent with degenerative disc disease of the lumbar spine. Plain x-rays of the lumbar spine done on 08/18/99 revealed mild posterior spurring at L4-5 with no other abnormalities noted.

The patient was also seen by Dr. Janush. Dr. Janush is an osteopathic physician who specializes in physical medicine and rehabilitation. **Dr. Janush saw the patient and the history that I reviewed does not mention any injury of 05/22/95. It mentions on 08/26/99 that the patient had nonsurgical mechanical back pain** and a conservative approach appears to be recommended. I agree with this completely. In addition to this, it states that the patient may have radiculopathy and EMGs are scheduled.

I reviewed a note from Dr. McGahan dated 01/23/2000 which was addressed to a Judge Smithart. At this **time Dr. McGahan states that the patient had a work-related injury on or about 09/08/95. I do not see definitive evidence of that in the notes** that I have been

RECEIVED
MAY 24 2002
Kelly E. Grady



# THE WILLIAM CABOT GROUP

Page 4
Re: Johnny Sasser

provided.

The patient was under the care of Dr. Wallace McGahan. Records from 02/23/00 reveal that he complained of back pain and pain in the legs. It states that he fell last week. There is no mention whatsoever of any work-related injury. The history continues on 07/03/00 with followup office notes. In addition to this it states under neurological examination that reflexes are 2+ and symmetric. **The patient is diagnosed with sciatica, however, it appears that this is purely subjective and is not substantiated by any objective findings.**

**Dr. McGahan saw the patient again on 08/07/00. Although the patient complained of numbness in the right thigh and leg and arms, Dr. McGahan's neurological examination revealed that the cranial nerves 2-12 were intact, deep tendon reflexes were within normal limits and there was no sensory deficit by touch. This is basically a normal examination.**

The patient was apparently referred to the pain clinic at Southeast Alabama Medical Center. At this time he was seen by Dr. John Marsella. Dr. Marsella diagnosed the patient with chronic low back pain, degenerative disc disease of the lumbar spine, and lumbar spinal stenosis.

Dr. Marsella in the year 2000 stated that the patient states in 1995 that he was involved in his usual occupation as a stevedore and he was unloading a heavy piece of equipment from a truck at the General Electric plant. He stated that the 800 pound motor became unsecured and he strained his back and that since that time he had had pain. **I find it very unusual that this is the history given five years after the alleged incident in question and is not mentioned in the notes prior to that time.** It is also noted that the patient has a significant history of medical problems with congestive heart failure, a myocardial infarction in 1996, and in 1998 a coronary arterial bypass.

Neurologic examination by Dr. Marsella revealed a nonradicular pattern of right lower extremity numbness. He was diagnosed as having lumbar spinal stenosis and degenerative disc disease and was put on methadone.





# THE WILLIAM CABOT GROUP

Page 5
Re: Johnny Sasser

The patient went back to see Dr. McGahan and on 09/30/00 Dr. McGahan reports under the orthopedic examination that range of motion was within normal limits, reflexes are 2+ and symmetrical, and basically there are **no abnormal findings noted.** The patient therefore **has subjective complaints of low back pain, but neurologically he appears to be intact.**

Dr. Marsella saw the patient back in followup on 09/27/00 and increased his methadone as well as changing the prescription for Zanaflex to baclofen. Dr. Marsella noted in his office note of 10/17/2000 the patient was doing well, but continued to have the same **nondermatomal numbness.** There is no mention of any muscle weakness and no mention of any reflex changes.

Basically, the patient's history continues unchanged. He continues to be followed by Dr. McGahan who notices no sensory deficit whatsoever and no neurological deficit.

I am troubled by a note dictated on 08/02/01. I do not see a signature for the note, but it states that the patient has a foot drop on the right. It also states that the patient has absent reflexes in the right leg. **If indeed this patient does have a foot drop on the right then I feel it is mandatory that he have a repeat MRI as well as repeat EMGs and NCS.**

I had the opportunity to review a **letter written by Dr. Ronald Alfano, a cardiologist with Cardiology Associates of Ozark in Ozark, AL.** Dr. Alfano states that he is rather upset when he finds out that the patient appears to be getting pain medications filled by himself as well as Dr. McGahan. In addition to this, it states that apparently there is some question as to whether Dr. McGahan had the ability to prescribe narcotic medication due to DEA licensure problems.

Dr. Alfano was treating the patient for a multiple of problems including severe coronary artery disease, ischemic cardiomyopathy, episodes of congestive heart failure, malignant hypertension, and hyperlipidemia. Obviously this patient is not a good surgical candidate.

If this patient does have a foot drop and further workup as mentioned above is necessary. I would recommend an IME at this point to determine whether he does or does not have a





# THE WILLIAM CABOT GROUP

Page 6
Re: Johnny Sasser

foot drop. If the patient does have a foot drop then he may need surgical intervention as a result of a large herniated disc. I would find it hard to believe that he does have a foot drop if indeed it is not mentioned by the other physicians.

**If the patient does not have a foot drop, my recommendation would be to continue with a conservative treatment program. I feel he is a very poor surgical candidate in view of his significant medical history.**

**I do not feel that there is any relationship between this gentleman's problems and any alleged injury in 1995.** I do not find significant evidence of any alleged definitive injury in 1995. I believe that he has normal degenerative disc disease of the lumbar spine as demonstrated by his MRI and neurologically he appears to be generally intact. His predominant treating physician, Dr. McGahan, notes no neurological deficit whatsoever. The pain clinic physician notes a spotty sensory deficit.

**As far as which medications are related to his injury with Ryder, it would be my impression that this includes Oxycontin, Zanaflex, Ambien, Valium, Arthrotec, Skelaxin, Celebrex, Lorcet, and Zantac.** Personally it is my preference not to treat these patients with strong narcotic medication. They tend to easily become addicted and I prefer anti-inflammatory medications which are less addictive and less problem generating in the long run.

**As far as further treatment, I see that this gentleman has not been treated with epidural blocks. Epidural blocks are frequently very helpful with spinal stenosis and I would recommend a series of one to three epidural blocks depending on his response.**

I believe this gentleman's prognosis is undetermined. At this time it is important to get an IME by a physician who is trained as a fellow in spine surgery. There are several fellowship-trained orthopedic spine surgeons. I believe that he would be the best one to determine what would be the appropriate course of action. **If this gentleman does have a foot drop then further workup is needed. If he does not have a foot drop, then I believe he could continue to be treated conservatively. I would recommend tapering**

RECEIVE
MAY 24 2002
Kelly E. Grady



# THE WILLIAM CABOT GROUP

Page 7
Re: Johnny Sasser

and eventually stopping his narcotic medication. Narcotics for degenerative disc disease typically take a patient down a road which does not have a good outcome. I believe he could benefit from a Functional Capacities Evaluation with validity testing. He should be able to work in a light duty work capacity given the pathology demonstrated not only on his MRI examinations, but his multiple physical examinations as well.

Thank you. Please contact me if you have any questions.

Very truly yours,

William Cabot, MD, FAAOS, FAADEP
Diplomate American Board of Orthopaedic Surgery
Fellow American Academy of Disability Evaluating Physicians
President

The opinions stated are those of this evaluator only. They are based on a retrospective review of medical records. The conclusions reached are opinions, expressed with reasonable medical certainty. They do not constitute per se a recommendation for specific claims or administrative functions to be carried out. No doctor-patient relationship is established and no treatment has been rendered.

WC/wz911
RPT##1464499 & 1464512



RECEIVED MAY 24 2002 Kelly E. Grady