EXHIBIT "10"



*4100 International Parkway*
*Suite 1010*
*Carrollton, TX 75007*

*WORKERS' COMPENSATION*
*PHYSICIAN ADVISOR REVIEW*

March 17, 2003

CLAIM #: AL 000674-0
DATE OF INJURY: 9/8/95

CLAIMANT: JOHNNY SASSER

I have reviewed the available medical records on Johnny Sasser and answered the questions submitted. I have not examined this patient, nor is there an existing patient/doctor relationship. This review was based on the medical records provided, under the assumption that the material is true and correct. In some instances, additional resources are referenced such as jurisdictional regulations, diagnostic guidelines, accepted research findings, professional journals and published medical articles.

Summary of Records

Mr. Johnny Sasser was a 44-year-old employee of Ryder Services Corporation when he allegedly sustained a work-related injury on or about 09/08/95. The State of Alabama "Employer's First Report of Injury or Occupational Disease" form completed on 03/16/98 records the mechanism of injury as "attempting to lift and reposition a cage".

Mr. Sasser's medical records pre-dating the date of claim indicate treatment for and/or diagnoses of hypertension, suspected angina, dyspnea, hormone imbalance, cervical disc disease and left wrist injury.

The brief hand-written office note of 09/11/95 records the chief complaint to be "pain to neck and lower back...pain in neck and shoulders...pain in low back...cannot sleep."

The office note of 10/06/95 reads, "patient fell...complains of pain to lower back". The office note of 10/25/95 records the history of "fell...pavement wet...fell 3 steps". Diagnoses recorded that day included "catalepsy...narcolepsy...cervical & back strains...chronic sleep disorder". He was noted to experience sudden episodes of falling asleep, including "while driving...drove off road."

The neurological consultation of 11/13/95 reveals Mr. Sasser was employed as a truck driver at the time of the incident, but he was unable to work at the time. Alan Prince, M.D. opined that the condition of sleep apnea syndrome was "probably worse from his head injury...subdural is questioned". He also diagnosed the claimant with carpal tunnel syndrome and "whiplash type injuries". The NCS/EMG of 11/13/95 was reported to be consistent with bilateral carpal tunnel syndrome.

The office note of 11/22/95 records chief complaints of "neck and low back pain...has had for years...increased pain after falling at home...approximately one month ago". Additional diagnoses recorded at that office visit included left knee arthroscopy and stomach ulcers.

RECEIVED
MAR 28 2003
Kelly E. Grady

Summary of Records

Mr. Sasser underwent staged bilateral carpal tunnel releases on 12/13/95 (right) and 02/28/96 (left).

Cervical MRI (02/12/96) revealed no abnormal findings, while the lumbosacral MRI of the same date revealed mild degenerative changes.

The Standard Insurance Company form completed 03/26/96 records the reasons for disability as "inability to use hands due to weakness, numbness…back pain, incapacitating…no use of functional grip in either hand."

The neurological evaluation of 03/27/96 performed by Robert Allen, M.D. records the clinical impression of "reflex sympathetic dystrophy, right hand/wrist." The repeat examination of 05/01/96 indicates the presence of "significant skin surface temperature difference [*evaluator's note: the greatest differential was recorded along the inner elbow and measured 1.7 degrees Centigrade*]. On 10/17/96, Dr. Allen recorded the presence of neurogenic pain. Neurontin had been determined to be of no therapeutic benefit, and Tegretol was prescribed.

Repeat MRI of the lumbar spine was obtained 01/23/97 which demonstrated "mild generalized canal stenosis…disc bulge and hypertrophy of the facets do encroach upon the lateral recesses bilaterally at L4-5…some impingement upon the L5 nerve roots in the lateral recesses bilaterally may be present…this appearance however does not appear to be significantly changed since 2-96…no evidence of disc herniation".

The office note of 05/06/97 adds the personal habit of "heavy smoking" to the list of medical conditions. The nurse rehabilitation consultant's letter of 06/15/98 records another chronic condition, that being "thyroid problems".

The "Interim Medical Case Management Report" of 06/15/99 records the repeated occurrence of falls, one "3-4 months ago onto right leg and cracked 3 ribs…re-injury date – fell 9 days ago, right leg gave away".

Apparently, Mr. Sasser underwent coronary artery bypass grafting in 11/98, per the data review sheets that accompanied Rachelle Janusch, D.O.'s initial examination of 08/18/99.

The Southeast Alabama Medical Center Pain Clinic note of 09/05/00 notes a history of congestive heart failure and a myocardial infarction in 1996. This note also included the first detailed description of the proposed mechanism of injury contributing to the onset of chronic low back pain. John Marsella, M.D. writes, "The patient states in 1995 he was unloading a heavy piece of equipment from a truck at the General Electric plant…when the 800 pound motor became unsecured he was attempting to secure it and in the process of moving it strained his back". Dr. Marsella recorded the claimant's occupation as Stevedore.

The office note of 08/02/01 records "a long history of lumbar disc disease that has been more severe for several years…on Workman's comp for several years…is complaining of pain in his back that is radiating down both legs especially bad down the right leg associated with marked muscle spasm of the right calf and buckling of the right knee and right foot drop".

Ronald Alfano, M.D., the claimant's cardiologist, in his letter of 04/16/02, states, "In my opinion I have been lied to with a serious breach of patient/doctor relationship, confidentiality etc".

The office visit of 05/16/02 records the chief complaint as "complains of legs bothering him…legs couldn't move while getting off riding mower". The physical examination performed on that date was recorded as "normal". The diagnosis listed was "spinal stenosis".


RECEIVED MAR 28 2003 Kelly E. Grady

Page 3
Physician Advisor Review
Sasser, Johnny

Summary of Records

The patient's medication profile produced by Center Drug Company during the months 02/02 through 06/18/02 lists the following medications:
- Valium 10-mg
- Lorcet 10/650-mg
- Celebrex 200-mg
- Skelaxin 400-mg
- Arthrotec 50-mg
- Tagamet 400-mg
- Zantac 150-mg
- Ambien 10-mg
- OxyContin 20-mg
- Zanaflex 4-mg
- Wellbutrin SR 150-mg
- Reglan 10-mg
- Isordil Tembids 40-mg
- Slow K 600-mg

Pharmacy profiles prior to 2002 have included the medications:
- Plavix 75-mg
- Prinivil 20-mg
- Demadex 100-mg
- Aldactone 25-mg
- Zyrtec 10-mg
- Imdur 120-mg
- Lasix 80-mg
- Zocor 20-mg
- Persantine 75-mg
- Nitro Lingual spray
- Welchol

Physician Advisor Determination

*Based on clinical documentation, is the claimant's current/recent treatment reasonable, necessary and directly related to the injury of 9/8/95?*

Based upon review of the available medical records, it is my professional medical opinion that the work-related injuries included lumbosacral strain and cervical strain. These conditions are consistent with the alleged mechanism of injury. Within a reasonable degree of medical probability, these conditions resolved within no less than six months following the date of injury.

Based upon review of the available medical records, it is my professional medical opinion that there is NO current or recent treatment provided that is related, reasonable and medically necessary with regard to the original work injury.


RECEIVED MAR 2 8 2003 Kelly E. Grady

Page 4
Physician Advisor Review
Sasser, Johnny

Physician Advisor Determination

There is NO objective medical evidence to support any claim that the underlying mild degenerative changes of the cervical and lumbar spine, as noted in the initial and subsequent MRIs, were causally related to the alleged mechanism of injury. The development of spinal stenosis was, within a reasonable degree of medical probability, solely attributable to the progression of a common and natural spinal disorder of life, and was NOT causally related to the mechanism of injury and any physical impairment causally related to the original work injury.

The relationship of the median neuropathy of the wrists and the subsequent report of neuropathic pain/reflex sympathetic dystrophy to the mechanism of injury and the original work injury is NOT clearly established by the available medical records. The original work injury was the result of the alleged overexertion of the spinal structures. The development of bilateral median neuropathy at the level of the wrists is inconsistent with the mechanism of injury.

*Identify what is and is not related to the work injury of 05/22/95. Provide extensive rationale.*

Based upon review of the available medical records, it is my professional medical opinion that there was NO causal relationship between the reported mechanism of injury and the finding of bilateral carpal tunnel syndrome.

Based upon review of the available medical records, it is my professional medical opinion that there was NO causal relationship between the presence of degenerative disc disease and/or spondylosis and the original work injury. There is NO medically plausible causal relationship between the exertional injuries of the cervical and lumbosacral spinal regions and the progressive development of the condition of spinal stenosis. Within a reasonable degree of medical probability, the latter condition is the result of a disorder of the spine that is common within the population.

Based upon review of the available medical records, it is my professional medical opinion that there is NO causal relationship between the mechanism of injury of the original work injury and the presence of sleep apnea and narcolepsy, tobacco induced pulmonary disease, hypertension, coronary artery disease, thyroid dysfunction, peptic ulcer disease and obesity.

Based upon review of the available medical records, it is my professional medical opinion that the mechanism of injury associated with the original work injury and its subsequent treatment is NOT causally related to the development of any mental health disorder, including but not limited to generalized anxiety disorder and/or depression.

*What (if any) medications are currently related, reasonable and necessary?*

Based upon review of the available medical records, it is my professional medical opinion that NONE of the medications prescribed since (not later than) 2001 have been causally related to the mechanism of injury of the original work injury. The medications prescribed were, within a reasonable degree of medical probability, for the treatment of conditions NOT associated with the mechanism of injury of the original work injury, as outlined above.

- Arthrotec 50-mg        NSAID with GI prophylaxis / spondylosis
- Celebrex 200-mg        NSAID / degenerative spondylosis
- Skelaxin 400-mg        muscle "spasm"
- Zanaflex 4-mg          muscle hypertonicity
- Valium 10-mg           muscle "spasms" and/or anxiolytic
- Lorcet 10/650-mg       narcotic analgesic / chronic pain syndrome
- OxyContin 20-mg        sustained release narcotic/chronic pain syndrome
- Wellbutrin SR 150-mg   anti-depressant



RECEIVED MAR 2 8 2003 Kelly E. Grady

Page 5
Physician Advisor Review
Sasser, Johnny

Physician Advisor Determination

- Ambien 10-mg             insomnia (non-benzodiazepine hypnotic)
- Tagamet 400-mg           treatment of peptic ulcer disease
- Zantac 150-mg            treatment of peptic ulcer disease
- Reglan 10-mg             promote gastrointestinal motility
- Isordil Tembids 40-mg    anti-hypertensive & cardio-protective
- Prinivil 20-mg           anti-hypertensive
- Zyrtec 10-mg             anti-histamine
- Imdur 120-mg             anti-hypertensive (?) [not listed in 2003 PDR]
- Lasix 80-mg              diuretic
- Demadex 100-mg           diuretic
- Slow K 600-mg            potassium replacement therapy
- Nitro Lingual spray      coronary atherosclerosis / anti-anginal
- Persantine 75-mg         platelet aggregation inhibitor
- Plavix 75-mg             platelet aggregation inhibitor
- Welchol                  lipid lowering agent
- Zocor 20-mg              lipid lowering agent
- Aldactone 25-mg          [not listed in 2003 PDR]

Professional opinions that address fees and treatment recommendations are intended as a guideline for the carrier's payment decisions. Provider reimbursement decisions are at the professional expertise and discretion of the claims handler. If you disagree with this determination, you have recourse to an appeal. To do this, submit a written request to the claims adjuster, alongwith additional documentation that you feel supports the medical necessity of the service(s) in question. We attempt to respond to appeals within ten business days.

Criteria employed in this review include concepts obtained from pertinent medical literature, continuing medical education, various clinical guidelines and/or clinical experience. Opinions proffered are based upon the concept of medical probability.

Terrence J. Wilson, M.D.
Board Certified, American Board of Physical Medicine and Rehabilitation
Board Certified, American Board of Independent Medical Examiners
Fellow, American Academy of Disability Evaluating Physicians
Member, American College of Occupational and Environmental Medicine
Member, International Spinal Injection Society
Member, American Academy of Pain Medicine
INTRACORP Physician Advisor U6Y
Texas Medical License # H7851

RECEIVED MAR 28 2003 Kelly E. Grady