**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **JOHNNY W. SASSER,**<br><br>**Plaintiff(s),**<br><br>**v.**<br><br>**RYDER TRUCK RENTAL, INC., d/b/a RYDER DEDICATED LOGISTICS, INC., a/k/a RYDER INTEGRATED LOGISTICS, INC., RYDER SERVICES CORPORATION and MARTYE LLOYD,**<br><br>**Defendant(s).** | **Civil Action No. 2:06-cv-593-CSC** |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT

COME NOW, the Defendants, improperly designated in Plaintiff's complaint as Ryder Truck Rental, Inc, d/b/a Ryder Dedicated Logistics, Inc., a/k/a Ryder Integrated Logistics, Inc., and Martye Lloyd, by and through the undersigned counsel, and files this Defendants' Reply Brief in Support of Summary Judgment. As further grounds for the granting of Summary Judgment, and specifically in reply to Plaintiff's responsive briefs, these Defendants state as follows:

### I. THE ONLY ALLEGED "EVIL MOTIVE" OFFERED BY THE PLAINTIFF IS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT AN OUTRAGE CLAIM

The Plaintiff erroneously claims there is sufficient evidence of "evil motive" to withstand summary judgment, and as the sole support for this assertion, Plaintiff points to his own testimony that the defendant Martye Lloyd allegedly "stated to Plaintiff that she would do whatever it took to cut him off because he was costing Ryder 'an awful lot of money.'" *See Plaintiff's Response to*

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.:   2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

*Defendant's Motion for Summary Judgment at 'page 5'.*[1]  Plaintiff offers no other motive other than this ("saving money") in support of his claim.  Plaintiff contends the motive of "saving money" is a sufficiently evil and egregious motive to constitute a jury question on the claim of outrage.  Plaintiff's assertion fails as a matter of law.

It first bears mentioning that the Plaintiff misstates the holding of Gibbs v. Aetna Casualty and Surety Company, 604 So.2d 414 (Ala. 1992).  (And Gibbs is the only case cited by Plaintiff in response to Defendant's Motion for Summary Judgment.)  According to Plaintiff's brief to this Court, the Gibbs court allowed the claim of outrage to proceed against the defendant, because that defendant had withheld medical benefits owed to the Plaintiff "for the purpose of getting him to take a much smaller settlement than he otherwise would take just to get them off his back."'  *See Plaintiff's Response to Defendant's Motion for Summary Judgment at 'page 6'.*  Plaintiff's misrepresentation of the Gibbs decision is no doubt inadvertent, but nevertheless should be corrected.

In truth, the Gibbs Court held the plaintiff in that case *failed* to present sufficient evidence of the claim of outrage, and *affirmed summary judgment* for the defendants.  Specifically, the trial court found there was no evidence of evil intent on the part of the defendants, and on that basis granted summary judgment as to the outrage claim.  In affirming summary judgment for the defendants, the Gibbs Court discussed the holding in an earlier case, which indicates a motive of "saving money" is not a motive that will (on its own) support a claim of outrage.  Specifically, the Gibbs Court discussed Wooley v. Shewbart, 569 So.2d 712 (Ala. 1990), and summarizing the Wooley plaintiff's claims as follows:  "The allegation in this case is simply that Shewbart denied

---

[1] The pages of the Defendant's copy of Plaintiff's brief are not numbered.  Where the undersigned cites a page number, it is counted sequentially from the first page of Plaintiff's brief.

**Page 2 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

Wooley's claim with no arguable reason for doing so." Wooley, 569 at 717. A fair reading of Wooley certainly permits the inference that the defendants' decision not to pay that claim must have been motivated in no small part by a desire to save money. Nevertheless, the Wooley Court concluded there was insufficient evidence of evil intent on the part of the defendants, and granted summary judgment, which was later affirmed on appeal. In so holding, the Alabama Supreme Court has apparently recognized, even without saying so expressly, that a motivation to saving money (without more) is simply an insufficient motive to establish a claim of outrage. See also, Reid v. Aetna Cas. & Sur. Co., 692 So.2d 863 (Ala.Civ.App. 1997) (where the trial court granted summary judgment for the defendant on an outrage claim, when the outrage claim was based on the plaintiff's allegation that the workers' compensation insurer was more concerned with saving money than with the plaintiff's recovery).[2]

Judge De Ment, writing for the Middle District, noted the extreme level conduct necessary for a plaintiff to be allowed to reach the jury on an outrage claim. See Robertson v. Alabama Dept. of Economic and Community Affairs, 902 F.Supp. 1473 (M.D.Ala. 1995). And the intent alleged by the Plaintiff in this case – "saving money" – is simply not sufficient. Specifically, Judge De Ment wrote, as follows:

> "Unfortunately for the plaintiff, the Supreme Court of Alabama has restricted the confines of this tort, allowing for recovery 'only in the most egregious circumstances.' Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041, 1044 (Ala.1993). To raise a jury issue on a claim for outrage, 'the plaintiff must present sufficient evidence that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.' Id. at 1043 (citing American Road Service Co. v. Inmon, 394 So.2d 361 (Ala.1981)).

[2]The Plaintiff in Reid v. Aetna Cas. & Sur. Co., 692 So.2d 863 (Ala.Civ.App. 1997), sued the defendants in a multi-count Complaint. Summary judgment was granted for the defendants on all counts, including the outrage claim. The plaintiff only appealed the ruling with respect to a fraudulent suppression claim. Therefore, the appellate court did not address the trial court's ruling with respect to the dismissal of the outrage claim.

**Page 3 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

> The Supreme Court of Alabama has stated that '[b]y extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' Inmon, 394 So.2d at 365.
>
> "Moreover, after citing more than twenty cases where a tort of outrage claim was not actionable, the court in Thomas outlined three limited circumstances where Alabama courts have allowed this claim to go to the jury:
>
> > "'(1) cases having to do with wrongful conduct in the context of family burials, see Whitt v. Hulsey, 519 So.2d 901 (Ala.1987) (reckless desecration of family burial ground by adjacent landowner sufficient to present a jury question as to claim of outrage), Levite Undertakers Co. v. Griggs, 495 So.2d 63 (Ala.1986) (defendant undertaker's wrongful retention of the remains of plaintiff's husband to force payment of funeral expenses sufficient to present a jury question as to claim of outrage), and Cates v. Taylor, 428 So.2d 637 (Ala.1983) (defendant's withdrawal of permission to use a burial plot 30 minutes before the planned burial sufficient to present a jury question on claim of outrage); (2) a case where insurance agents employed heavy-handed barbaric means in attempting to coerce the insured into settling an insurance claim, National Security Fire & Cas. Co. v. Bowen, 447 So.2d 133 (Ala.1983); and 3) a case involving egregious sexual harassment, Busby v. Truswal Systems Corp., 551 So.2d 322 (Ala.1989).'
>
> "Thomas, 624 So.2d at 1044."

Robertson, 902 F.Supp. at 1488. The preceding holding by the Middle District (and the Alabama Supreme Court) is extremely significant to this case, because the facts in the case at bar fit into none of the "three limited circumstances where Alabama courts have allowed this claim to go to the jury." Id.

It should be without dispute that this case is does not involve family burials (category one), or sexual harassment (category three). Thus, the Defendants would expect Plaintiff to attempt to fit this case into the category of insurance claim settlements (category two). However, this case does not involve any kind of claim settlements, or negotiating tactics, or settlement negotiations of any kind for that matter. On the contrary, this claim simply involves the Defendants reliance on outside medical opinions as a basis for the denial of the claim.

**Page 4 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

It is reasonable to treat the outright denial of a claim differently (for purposes of outrage) from the withholding of benefits as a negotiating tactic. When an insurer denies benefits, the insured is free to consult with legal counsel of the insured's own choosing, and to pursue their rights to the full extent allowed by law. In such cases, the insurer has done nothing to stop them from pursuing a legal remedy. In contrast, when an insurer withholds medical treatment for the purpose of causing pain, *as a negotiating tactic*, it is presumed that the ultimate goal of the insurer is to overcome the insured's free will, and to coerce the insured into a settlement which would surely include the insured waiving his or her rights to pursue whatever legal remedies might be available. This later instance (i.e., withholding medical benefits *as a negotiating tactic*) would in the end result in an insured's involuntary forfeiture of all of his or her legal remedies.

In this respect, the Alabama Supreme Court has held that "the minimum threshold that a defendant must cross in order to commit outrageous conduct" is represented by Continental Casualty Insurance Co. vs. McDonald, 567 So.2d 1208 (Ala. 1990).[3] In that case, the defendant's motive and conduct was far beyond that of merely saving money. On the contrary, the Court found the defendants in McDonald had engaged in an concerted *effort to coerce* the plaintiff into doing something the plaintiff was not otherwise willing to do. Specifically, the Court found the defendant had engaged in a scheme of withholding medical benefits to the plaintiff, for the purpose of causing the plaintiff pain and discomfort, in the hopes that the pain and discomfort would wear the plaintiff down to the point where he was in a weakened negotiating position and would settle his claim cheaply. Thus, the outrageous conduct in McDonald was not based on the fact that the defendant

[3] Presumably, this is the case Plaintiff intended to cite in his brief.

**Page 5 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

was attempting to save money. On the contrary, the outrageous conduct was the fact that the defendant was causing the plaintiff to experience physical pain *as a negotiating tactic*.

It is therefore significant in this case that the termination of Plaintiff's benefits was not in the context of settlement negotiations. It can be safely assumed the Defendants knew Plaintiff had the right to, and probably would, challenge the denial of benefits in Court, and that the Defendants would have to justify that in Court. Nevertheless, the Defendants made no effort to stop the Plaintiff from exercising those rights.

Implicit in this discussion (and in the Alabama Supreme Court's holding in Thomas, supra) is the fact that outrage in a workers' compensation context does not arise simply because the denial of a claim results in pain and suffering on the part of the employee, even if the denial was without good reason. Instead, in order for outrage in a workers' compensation context there must be a specific intent on the part of the defendants to cause the plaintiff mental anguish. This is the significance of the references to "coercion" in the case law. See, e.g., National Security Fire & Cas. Co. v. Bowen, 447 So.2d 133 (Ala.1983) (as quoted by Robertson, supra); and McDonald, supra.

Workers' compensation benefits are denied every day – sometimes by an insurance adjuster, sometimes by a Court. Often, the denial of workers' compensation benefits spurs the employee to hire a lawyer and go to trial, and sometimes the employee convinces the trial court that the workers' compensation benefits should never have been denied in the first place. But that is not outrage. On the contrary, the Alabama Supreme Court has shown that in order for such a case to rise to the level of outrage, there must be that added element of the insurer's specific intent to cause the employee pain, and a plan on the part of the insurer to use that pain to the insurer's advantage. Those elements of specific intent are absent in this case.

**Page 6 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

The Defendants reiterate that in this case, there is simply no evidence of any evil intent on their part, whatsoever. There is no evidence of any specific intent to cause the Plaintiff pain. And there is certainly no evidence of any specific intent on the part of the Defendants to use the Plaintiff's pain to their advantage. There is no evidence of coercion in this case, because, in fact, there was no attempt to coerce the Plaintiff in this case to do anything. The Defendants actions were motivated by nothing other than their desire to protect their lawful rights in a legally permissible manner. There is no evidence to the contrary, and that is not outrage. Accordingly, the Defendants respectfully submit the Plaintiff's complaint is due to be dismissed with prejudice.

## II. THE DEFENDANTS CAN JUSTIFIABLY RELY ON OPINIONS OF INDEPENDENT PHYSICIANS WHO DISAGREE WITH A CLAIMANT'S TREATING PHYSICIANS

Plaintiff appears to believe that the Defendants would be guilty of outrage unless they could prove beyond any doubt that the opinions of its reviewing physicians were undebatable, absolutely correct and fully supported by Plaintiff's treating physicians. That is not what the law requires. In fact, if in order to avoid outrage, an employer could only rely on opinions of independent physicians who agree with the employee's treating physicians, the Utilization Review process established by the Alabama Department of Industrial Relations would serve absolutely no purpose.

The very existence of the Utilization Review process established by Alabama law proves it is acceptable for an employer to seek out the opinions of physicians other than the employee's treating physicians; and in doing so, it must be expected that these non-treating physicians will from time to time disagree with the treating physicians. The fact that the non-treating physicians disagree with the treating physicians cannot be evidence (not even a scintilla) of any wrongful motive on the part of an employer who relies on the opinion of the non-treating physician.

**Page 7 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

Plaintiff cites Dr. Marsella's testimony, and his opinion that certain treatments are necessary, while reviewing physicians state those treatments are not. Plaintiff then asserts "this expert opinion by Mr. Sasser's approved physician demonstrates there is a material issue of fact as to whether Ryder's reviewing physicians were accurate with their opinions. A jury should decide." *See Plaintiff's Supplemental Response to Defendant's Motion for Summary Judgment at page 2.* Plaintiff obviously misses the point of what question would be submitted to the jury in this case. It is not the question of which physicians were correct. The physicians are not on trial.

The question is whether it was beyond the bounds of human decency for the defendants to rely on those physicians' opinions. The very existence of the Utilization Review process, promulgated by the Alabama Department of Industrial Relations under authority granted to it by the Alabama Workers' Compensation Act, establishes that it is clearly not outrageous to rely on such independent physicians' opinions. Accordingly, the Defendants respectfully submit the Plaintiff's complaint is due to be dismissed with prejudice.

## III. PLAINTIFF ARGUMENTS THAT THE PEER REVIEWS DID NOT COMPLY WITH UTILIZATION REVIEW ARE UNFOUNDED

### A. Plaintiff's Argument that the Defendants "cannot re-litigate whether the Plaintiff was injured" is a Red Herring.

Plaintiff seems to be fixed on the fact that his prior physician concluded the condition for which he previously treated Plaintiff was related to the accident, and that the state court previously found that those conditions and treatments were related to the accident. That was in the year 2000.

Plaintiff's argument is beside the point, because so long as his medical claim remains open, the questions of whether any given treatment is necessary, related, and reasonable must necessarily

**Page 8 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

be asked, over and over again, whenever a new treatment is considered. It is the nature of the Alabama Workers' Compensation Act. The very existence of the Utilization Review process proves this.

It is true the employer must defer to expert physician opinions on the question of whether an employee's medical conditions are related to an accident, or whether given treatment is reasonably necessary. Nevertheless, there is no question that an employer may seek a second opinion, through utilization review, on these matters.

At issue now are Plaintiff's more recent complaints and treatments (in any event, more recent than 2000). The Plaintiff's physicians, and the Defendant's reviewing physicians, may all offer opinions on these questions. Those opinions may be informed by the opinions of previous physicians, or not. The opinions of current treating physicians and reviewing physician may agree with the opinions of previous physicians, or not. All that binds the opinions of the current treating physicians and reviewing physicians is their own professional experience, judgment and integrity.

The litmus test for whether or not the employer is entitled to rely on a physician's opinion is not "whether the physician's opinion is correct." In fact, until a determination of a denial of coverage is submitted to the worker's compensation court for review, there is no way to know which opinion is correct in the eyes of the law. Thus, because the issue at hand is whether outrage has been committed, the only question before the Court in this respect is whether it was beyond the bounds of civilized society for the employer to rely on that physician's expert opinion – not whether the physician's opinion was right or wrong.

In the case at bar, there is absolutely no evidence to suggest the Defendants reliance on the independent physician reports was anything less than civilized. And that fact would not change if

**Page 9 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

it were later determined that these physicians were wrong, because even then, the defendants did no more than assert their lawful rights in a legally permissible way.

It is unfortunate that Dr. Marsella failed to respond to the Utilization Review letter from Intracorp. He admitted he received the letter denying his recommended services on grounds that the need for them was not sufficiently documented. *See Exhibit A to Plaintiff's Supplemental Response to Defendant's Motion for Summary Judgment (Deposition of Dr. Marsella at page 56-7; and 89-92).* He admitted he could read where the denial letter clearly offered to provide Dr. Marsella with a copy of the reviewing guidelines at Dr. Marsella's request; however, he also admitted he never requested a copy of the guidelines. *Id., at 56-7; and 90-92.* Dr. Marsella admitted the letter clearly explained the right to appeal this decision at Dr. Marsella's request; however, Dr. Marsella admitted he failed to appeal the decision (and apparently still has not appealed the decision, some three years later). *Id., at 56-7; and 90.* In fact, Dr. Marsella admitted he failed to make any response whatsoever to the denial letter. *Id., at 56-7; and 92.* The letter simply went into the patient file, and the patient visits stopped. *Id., at 27-8; 31-2.*

To be clear, Dr. Marsella did not testify he disagreed with the grounds of the denial letter. *Id., at 30-1; and 90-1.* He testified he did not read that letter as contradicting his medical judgment. Rather, he interpreted the letter as simply saying insufficient information was available to determine the treatment was reasonably necessary. *Id.* If Dr. Marsella had disagreed with the denial letter, or wanted more clarification, or really believed at the time that the recommended treatment was necessary, it was incumbent on him to respond. *Id. at 89-90.* He did not. *Id., at 89-92.*

Note that Dr. Marsella testified it was not completely out of the ordinary for him to receive a letter such as this one, indicating additional documentation is necessary before treatment can be

**Page 10 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

approved. *Id., at 94-5.* He admitted he sometimes receives similar letters, and has responded to similar letters by providing additional information concerning the treatment recommendation. *Id.* He further testified he believes he has sometimes received a favorable response after submitting additional documentation. *Id.* Nevertheless, he failed to do so in this case. *Id., at 89-92.* His first recorded reaction to the May 25, 2004 denial letter was in his deposition, on July 20, 2007. *Id.*

**B. Plaintiff's Argument that the Defendant Could Not Rely on Peer Reviewers who were not Board Certified in the Same Field as the Treating Physician is Another Red Herring**

Plaintiff contends the Utilization Review procedure used by the Defendants in this case was flawed, because, he contends, the reviewing physicians were not board certified in the same field as the treating physicians who's recommendations were under review. This argument misses the point for two reasons.

First, even if Plaintiff had a correct understanding of the Utilization Review process, the field of practice of the reviewing physicians has no bearing whatsoever on whether or not the Defendants acted with an "evil motive" in denying Plaintiff's claim. Alabama courts have rejected the notion that a claim process managed in a negligent or misinformed manner rises to the level of outrage. See Raye v. Employer's Ins. of Wausau, 345 F.Supp.2d 1313 (S.D.Ala. 2004) (citing Jenkins v. United States Fidelity & Guaranty Co., 698 So.2d 765, 768 (Ala.1997); and AALAR, Ltd. v. Francis, 716 So.2d 1141, 1144 (Ala.1998)). Thus, while the qualifications of the reviewing physicians may bear on whether or not the denial of the worker's compensation claim should stand, it is irrelevant to the outrage claim.

**Page 11 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

Second, Plaintiff's basic premise is incorrect. Without citing any legal authority whatsoever, Plaintiff proclaims "[t]he 'peer' physicians are supposed to be board certified in the same area as the treating physician who was authorizing treatment." *See Plaintiff's Supplemental Response to Defendant's Motion for Summary Judgment at page 4.* Not only does Plaintiff's argument fail to cite any legal authority; the law refutes her position.

In proof of the Defendant's point, it will set forth the basic steps of Utilization Review, insofar as it is applicable to the progress of Plaintiff's claim. An employer's refusal to pay for a treatment based on a lack of medical necessity is justified when the employer follows the utilization-review procedures set out in *§ 25-5-293(k)*, and applicable administrative regulations. *See Ex parte Southeast Alabama Medical Center*, 835 So.2d 1042 (Ala.Civ.App. 2002). The heart of these procedures are set forth in the Rules of the Department of Industrial Relations, which prescribe several steps for evaluating whether a recommended treatment is medically necessary.

The Utilization Review process begins in-house with the company who is managing a medical claim, and provides for an initial the review of the employee's medical records by a technical reviewer. *See §§ 480-5-5-.06(1) and -.07(2), Ala. Admin. Code*. A technical reviewer cannot deny claims, but can refer them to First-Level Clinical Review by nurses and other licensed or similarly certified medical professionals. *See §§ 480-5-5-.06(2) and -.07(3), Ala. Admin. Code*. If the First-Level Clinical Reviewer cannot approve the requested treatment, then it is referred to a Second-Level Clinical Reviewer.

Second-Level Clinical Review is conducted by a physician; however, this physician does not have to be licensed or certified in the same field or specialty as the ordering physician. *§*

**Page 12 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

*480-5-5-.06(3), Ala. Admin. Code*. The qualifications necessary for the Second-Level Clinical Review are:

> "1. Hold a current nonrestricted license to practice medicine or a health profession in the United States;
>
> "2. Be oriented to the principles and procedures of utilization review, peer review and these rules;"

See *§§ 480-5-5-.06(3), Ala. Admin. Code*.

Not until Third Level Clinical Review, do the rules require the recommendation to be a reviewed by a physician who is:

> "board certified in the same or similar specialty approved by the American Board of Medical Specialists for Physicians or the Advisory Board of Osteopathic Specialists for Osteopaths from the major areas of clinical services or a physician who normally treats that type of case as the ordering provider, whose medical services are being non-certified or denied, or for nonphysician clinical peers, the recognized professional board for their specialty."

See *§§ 480-5-5-.06(4), Ala. Admin. Code*. In addition, with respect to the case at bar, it is most significant to note that the Utilization Review process does not reach the Third Level Clinical Reviewer unless (1) the Second Level clinical reviewer denies the recommendation for treatment, *and* (2) the treating physician appeals the decision. See *§§ 480-5-5-.07(4), Ala. Admin. Code*. Thus, under Utilization Review procedure, the Third Level Clinical Review is an appeal process.

Turning now to the facts of the case at bar, Plaintiff's argument centers on Dr. Marsella's treatment recommendations, and the Utilization Review pertaining to the same. According to Dr. Marsella's own testimony, he received a Utilization Review letter from a licensed physician who stated the procedure could not be authorized, and who advised Dr. Marsella that he could appeal the decision. *Id., at 56-7; and 90.* Clearly, this Utilization Review letter was the result of the Second Level Clinical Review. As required by Utilization Review guidelines, the letter gave Dr. Marsella

**Page 13 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

notice of his right to appeal the decision. *Id.* If Dr. Marsella had elected to appeal the decision, then the next step would have been the Third Level Clinic review, and required a reviewing physician with the same credentials as Dr. Marsella. However, Dr. Marsella did not appeal the decision of the Second Level Clinical Reviewer. *Id., at 56-7; and 92.* Therefore, the Utilization Review process ended there, just as it is designed to do so by the rules, when no appeal is requested.

The Defendants reiterate their position that such a technical flaw in the Utilization Review process would be irrelevant to the Plaintiff's outrage claim. However, the Defendants also submit that the foregoing discussion shows the review of Plaintiff's treatment recommendations was in accordance with Utilization Review guidelines, and was a permissible exercise of Defendant's lawful rights under the Alabama Workers' Compensation Act. Accordingly, the Defendants respectfully submit the Plaintiff's complaint is due to be dismissed with prejudice.

WHEREFORE, PREMISES CONSIDERED, the Defendants designated in Plaintiff's complaint as Ryder Truck Rental, Inc, d/b/a Ryder Dedicated Logistics, Inc., a/k/a Ryder Integrated Logistics, Inc., and Martye Lloyd, respectfully request that summary judgment be entered in their favor dismissing with prejudice any and all claims against them in this matter, and taxing cost as paid and incurred.

Respectfully submitted,

By: /s/ William A. Austill
William A. Austill (Fed ID: [redacted])
Attorney for Defendants

**Page 14 of 15**

*Sasser, Johnny W. Vs. Ryder Truck Rental, Inc. and Martye Lloyd, et al*
Civil Action No.: 2:06-cv-593-CSC
Defendants' Reply Brief in Support of Summary Judgment

OF COUNSEL:
Austill Lewis, P.C.
P.O. Box 11927
Birmingham, AL 35202-1927

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been furnished by U.S. Mail, postage prepaid and properly addressed, on this 31st day of July, 2007 to:

Amy M. Shumate
519 South Oates Street
Dothan, AL 36301
Attorney For: Johnny W. Sasser

OF COUNSEL

**Page 15 of 15**